**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mayfair Gold Corporation, | No. CV-24-03559-PHX-SHD |
| Plaintiff, | **ORDER** |
| v. | |
| Patrick Evans, et al., | |
| Defendants. | |

Pending before the Court is Defendants Patrick Evans ("Mr. Evans") and Bonnie Evans's ("Mrs. Evans") Motion to Dismiss Plaintiff's First Amended Complaint Based on Forum Non Conveniens (the "Motion") (Doc. 17).  For the following reasons, the Motion will be **granted**.

## I.    BACKGROUND

Plaintiff Mayfair Gold Corporation ("Mayfair Gold") is a corporation organized under the laws of British Columbia, Canada, with its principal place of business in Ontario, Canada.  (Doc. 12 at 3.)  Mayfair Gold is an exploration-stage mining company with operations and principal assets located in Canada.  (*Id.*)

Mr. Evans resides in Scottsdale, Arizona with Mrs. Evans, his spouse.  (*Id.*)  According to the First Amended Complaint (the "Complaint"), Mr. Evans served as Mayfair Gold's Chief Executive Officer and as a member of its board of directors from 2020 until June 2024.  (*Id.*)  According to the Complaint, "at all times material hereto Patrick Evans was acting on behalf of his marital community with Bonnie Evans."  (*Id.*)

The genesis of this dispute is a proxy contest initiated in early 2024 by Muddy Waters Capital LLC ("Muddy Waters"), a significant shareholder of Mayfair Gold, seeking to replace Mayfair Gold's board of directors.  (*Id.* at 4–6.)  According to the Complaint, from approximately November 2023 through February 2024, Muddy Waters "developed serious concerns about the direction of the Company and about [Mr.] Evans' leadership." (*Id.* at 4.)  Muddy Waters's representatives communicated their concerns to Mr. Evans through a series of meetings, but the meetings did not alleviate Muddy Waters's concerns. (*Id.* at 5.)  Accordingly, Muddy Waters proceeded with the proxy contest which culminated in a shareholder vote held on June 5, 2024, that replaced the entire Mayfair Gold board, including Mr. Evans.  (*Id.* at 4–6.)

During the proxy contest, disputes arose concerning Mr. Evans's employment agreement with Mayfair Gold and his alleged entitlement to a termination payment in connection with the impending change in Mayfair Gold's board of directors.  (*See id.* at 6–7).  The Complaint alleges that, in connection with the proxy contest, Mr. Evans improperly amended his employment agreement with Mayfair Gold to increase his salary and to expand the circumstances under which he would be entitled to a termination payment.  (*See id.*).  These amendments included revisions to the definition of "change in control" to encompass a mere change in the composition of the board, rather than a traditional change in corporate ownership.  (*Id.* at 7.)  Mayfair Gold asserts that these actions were not authorized by Mayfair Gold's full board or Compensation Committee.  (*Id.* at 8, 11.)  The Complaint also alleges that Mr. Evans induced certain other employees to enter into similar arrangements, amending their employment agreements and participating in purported settlement agreements designed to trigger termination payments upon the success of the proxy contest.  (*Id.* at 13.)

In anticipation of these termination payments, Mayfair Gold placed approximately $4 million Canadian Dollars ("CAD") into a trust for distribution to Mr. Evans and the other employees.  (*Id.* at 13–14.)  Following the shareholder vote, Mr. Evans received a termination payment of approximately $1.5 million CAD, while the other employees

ultimately returned their funds to the Company when they were "faced with the threat of litigation." (*Id.*)  The Complaint further alleges that disputes concerning these termination payments were the subject of proceedings in the Supreme Court of British Columbia, including a petition filed by Muddy Waters in May 2024.  (*Id.* at 14–15.)  According to the Complaint, the Canadian court issued orders addressing the disbursement of the trust funds, and the litigation was later discontinued as to Mr. Evans without prejudice.  (*Id.* at 15–16.)

## II.    PROCEDURAL HISTORY

On December 16, 2024, Mayfair Gold filed this lawsuit against Defendants.  (Doc. 1).  Mayfair Gold asserts four claims against Defendants for fraud, conversion, breach of fiduciary duty, and breach of contract.  (Doc. 12 at 16–20.)  On March 6, 2025, Defendants filed a motion to dismiss for forum non conveniens.  (Doc. 17.)  Mayfair Gold responded, (Doc. 18), and Defendants replied (Doc. 19).  In their Reply, Defendants identified twenty-one potential witnesses, all of whom are Canadian residents, and attached a declaration by Mr. Evans explaining why "it will be necessary to call the [21] witnesses to testify." (Doc. 19-1 at 2.)  Defendants argued that the presence of so many witnesses in Canada made Canada a more appropriate forum for this litigation.  (*See id.* at 3–4.)

Subsequently, Mayfair Gold filed a motion to strike the witness list and related arguments in Defendants' Reply, or in the alternative, for leave to file a sur-reply, attaching the proposed sur-reply.  (Doc. 20; Doc. 20-1.)  Defendants opposed the motion, arguing that the witness list directly addressed Mayfair Gold's assertions regarding the location of witnesses and that the witnesses were critical to their defenses.  (Doc. 21 at 3–4.)

Oral argument on both motions was held on February 18, 2026.  At that hearing, the Court denied Mayfair Gold's motion to strike and granted leave to file the sur-reply.  (Doc. 26.)  The proposed sur-reply is now lodged on the docket, (Doc. 27).  Following oral argument, the Court directed the parties to submit limited supplemental briefing regarding the availability of material witnesses and the potential inspection of relevant property in Arizona.  (Doc. 28.)  On February 27, 2026, the parties filed their supplemental briefs. (Docs. 31, 32.)  The Court will consider Defendants' Motion to Dismiss together with

1    Mayfair Gold's Opposition, Defendants' Reply, the lodged sur-reply, the parties'

2    arguments at oral argument, and the supplemental briefing in evaluating the forum non

3    conveniens factors.

### III.    LEGAL STANDARD

5         "A district court has discretion to decline to exercise jurisdiction in a case where

6    litigation in a foreign forum would be more convenient for the parties." *Lueck v.*

7    *Sundstrand Corp.*, 236 F.3d 1137, 1142 (9th Cir. 2001) (citing *Gulf Oil Corp. v. Gilbert*,

8    330 U.S. 501, 504 (1947), *superseded by statute as stated in Amer. Dredging Co. v. Miller*,

9    510 U.S. 443, 449 n.2 (1994)).  "In dismissing an action on forum non conveniens grounds

10    the court must examine: (1) whether an adequate alternative forum exists, and (2) whether

11    the balance of private and public interest factors favors dismissal." *Id.*  (citations omitted).

12    "The doctrine of *forum non conveniens* is a drastic exercise of the court's 'inherent power'

13    because, unlike a mere transfer of venue, it results in the dismissal of a plaintiff's case."

14    *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1224 (9th Cir. 2011).

15         Ordinarily, there is "a strong presumption in favor of the plaintiff's choice of forum,

16    which may be overcome only when the private and public interest factors clearly point

17    towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255

18    (1981).  However, "[b]ecause the central purpose of any *forum non conveniens* inquiry is

19    to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference."

20    *Id.* at 256.  "But less deference is not the same thing as no deference." *Ravelo Monegro v.*

21    *Rosa*, 211 F.3d 509, 514 (9th Cir. 2000).  Here, although Defendants are at home in

22    Arizona, the plaintiff's foreign residency reduces the deference normally afforded to a

23    plaintiff's choice of forum. *Piper Aircraft*, 454 U.S. at 255–56; *Gemini Cap. Grp., Inc. v.*

24    *Yap Fishing Corp.*, 150 F.3d 1088, 1091 (9th Cir. 1998) (holding that a foreign plaintiff's

25    choice of forum receives reduced deference even when the defendant is at home in the

26    chosen forum).

### IV.    DISCUSSION

28         To prevail on their motion to dismiss based upon forum non conveniens, Defendants

"bear the burden of demonstrating an adequate alternative forum, and that the balance of private and public interest factors favors dismissal." *Carijano*, 643 F.3d at 1224. The Court will first address the adequacy of an alternative forum and then address each of the private and public interest factors.

### A. Adequate Alternative Forum

"An alternative forum is deemed adequate if: (1) the defendant is amenable to process there; and (2) the other jurisdiction offers a satisfactory remedy." *Id.* at 1225. A defendant's "'voluntary submission to service of process' suffices to meet the first requirement for establishing an adequate alternative forum." *Id.* (quoting *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1178 (9th Cir. 2006)). Even when the defendant is amenable to process in the alternative forum, however, there may be "rare circumstances" in which the "remedy provided by the alternate forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft*, 454 U.S. at 254 & n. 22. For example, dismissal is inappropriate when the alternate forum "does not permit litigation of the subject matter of the dispute." *Id.*

In its briefing, Mayfair Gold argued that British Columbia was an inadequate forum because Mrs. Evans had not consented to jurisdiction there; Mayfair Gold did not contend that differences in British Columbia's procedures rendered the forum inadequate. (Doc. 18 at 8–9.) At oral argument, Defendants clarified that they—both, Mr. and Mrs. Evans—are willing to submit to the jurisdiction of British Columbia courts.

In response, Mayfair Gold argued for the first time that British Columbia is not an adequate alternative forum because its discovery procedures, specifically, presumptions limiting the number of depositions and a narrower scope of discovery, differ from those in this Court. Arguments raised for the first time at oral argument need not be considered. *See Xpotential Fitness v. Arizona*, 2020 WL 3971908, at *5 n.4 (D. Ariz. 2020). In any event, the differing discovery procedures do not render the "remedy provided by [British Columbia] . . . so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft*, 454 U.S. at 254.

1    Because all named Defendants have agreed to submit to the jurisdiction of British

2    Columbia, Defendants have established the existence of an adequate alternative forum.  *See*

3    *Carijano*, 643 F.3d at 1225.  To ensure that all Defendants remain amenable to process,

4    the Court will condition this dismissal on Defendants' acquiescence to jurisdiction in

5    Canada's courts.  *See, e.g.*, *Contact Lumber Co. v. P.T. Moges Shipping Co.*, 918 F.2d

6    1446, 1450 (9th Cir. 1990).

7    Having established that British Columbia is an adequate alternative forum, the Court

8    turns to balancing of the public and private interest factors.

9    **B.  Private Interest Factors**

10    In deciding whether to dismiss for forum non conveniens, courts consider seven

11    private interest factors: "(1) the residence of the parties and the witnesses; (2) the forum's

12    convenience to the litigants; (3) access to physical evidence and other sources of proof; (4)

13    whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses

14    to trial; (6) the enforceability of the judgment; and (7) all other practical problems that

15    make trial of a case easy, expeditious and inexpensive."  *Lueck*, 236 F.3d at 1145 (citing

16    *Gulf Oil*, 330 U.S. at 508).

17    **1.  Residence of the Parties and the Witnesses**

18    The Court first considers the residence of the parties and witnesses.  Mayfair Gold

19    is a Canadian corporation organized under the laws of British Columbia, with its principal

20    place of business in Ontario and its operations and principal assets located in Canada.  It

21    nonetheless prefers litigation in Arizona and, as noted above, its choice to sue outside its

22    home forum is entitled to reduced deference.  *See Gemini Capital Grp.*, 150 F.3d at 1091–

23    92; *Foster Poultry Farms Inc. v. LaClaire*, 2020 WL 1188189, at *2 (D. Ariz. 2020).

24    Defendants are residents of Arizona but would prefer litigation in Canada.  The residence

25    of the parties is a neutral factor.

26    Turning to witnesses, Defendants identified twenty-one potential Canadian

27    witnesses.  (Doc. 21 at 4–6.)  Mayfair Gold contends that sixteen are immaterial because,

28    even by Defendants' description, their testimony would not bear on the core issues in this

case—whether Mr. Evans breached fiduciary duties, committed fraud or conversion, or was contractually entitled to the challenged termination payment.  (Doc. 27 at 2–3.)  The Court agrees that the analysis must center on material witnesses rather than those whose testimony would be cumulative or peripheral.  *Lueck*, 236 F.3d at 1146 (holding "a court's focus should not rest on the number of witnesses," rather "a court should evaluate the materiality and importance of the anticipated evidence and witnesses' testimony and then determine their accessibility and convenience to the forum" (cleaned up)).

At this stage of the litigation, it is apparent that at least six of the twenty-one potential Canadian witnesses are material: Frank G., Roland H., Douglas C., Christopher R., Harry P., and Darren M.[1]  (*See* Doc. 19 at 4–6; *see also* Doc. 7 (challenging the materiality of sixteen witnesses but not contesting the materiality of these six).)  The parties' submissions, and their arguments at oral argument, confirm that these witnesses were directly involved in Mayfair Gold's corporate governance, the relevant employment agreements and compensation decisions, and the administration of the termination payment at issue.  (*See* Doc. 19 at 4–6.)  Their anticipated testimony goes to the formation and interpretation of the employment agreements, board-level decision-making, and the circumstances surrounding the payment challenged in this action.  (*See id.*)  In other words, these are not marginal actors; rather, they are principal participants in the events giving rise to this dispute.  The Court can therefore conclude that at least six material witnesses reside in Canada.  Of these, five have stated that they will not travel to the United States for trial. *See infra*, Section IV(B)(4).

Mayfair Gold, for its part, identifies five potential witnesses who reside in the United States.  At oral argument, Mayfair Gold stated that these witnesses are located in Florida, Texas, and California.  None of these five witnesses resides in Arizona and only one has indicated an unwillingness to testify in Canada.  *See infra*, Section IV(B)(4). Mayfair Gold has identified these five witnesses and described their general background but has not specifically briefed the materiality of their anticipated testimony to the core

---

[1]    To protect the privacy of individuals referenced herein, the Court refers to non-party individuals by their first name and last initial only.

1    issues in this case.  (*See* Doc. 18 at 11.)

2        Mayfair Gold argues that any inconvenience to Canadian witnesses can be mitigated

3    by taking depositions in Canada, either live or via videoconference.  (*See id.* at 13.)

4    Mayfair Gold also points out that some of Defendants' Canadian witnesses regularly travel

5    to the United States.  (*Id.* at 12–13.)  Neither argument is persuasive.  "[C]ourts recognize

6    that reading a deposition at trial—even a videotaped deposition—is no substitute for the

7    advantages to the parties, the judge and the jury of having important witnesses appear live

8    at trial."  *Newegg, Inc. v. Telecomm. Sys.*, 2009 WL 1814461, at *7 (N.D. Cal. 2009); *see*

9    *also Gulf Oil*, 330 U.S. at 511 (warning against fixing the place of trial where litigants

10   cannot compel personal attendance and "may be forced to try their cases on deposition").

11       If this case proceeds to trial in Arizona, the Canadian witnesses, who comprise the

12   majority of the material witnesses, would be required to travel internationally to testify

13   live, assuming their attendance could be compelled.  *See* Fed. R. Civ. P. 43(a) (stating that

14   "[a]t trial, the witnesses' testimony must be taken in open court unless" the court finds

15   "good cause in compelling circumstances" to allow remote testimony); *see also infra*

16   Section IV(B)(4).  International travel for a multi-day trial entails significantly greater

17   expense, time commitments, and logistical complications than travel within British

18   Columbia, or, more broadly, domestic travel in Canada.  Moreover, occasional business

19   travel to the United States does not equate to an ability or willingness to appear for extended

20   court proceedings in this forum.

21       The Court acknowledges that Mayfair Gold's United States-based witnesses would

22   face greater travel burdens if the case were litigated in Canada rather than Arizona.  But

23   this concern is significantly diminished by the fact that these witnesses face substantial

24   travel regardless of forum, since none resides in Arizona.  The balance is therefore as

25   follows: at least six material witnesses reside in Canada and their testimony will bear

26   directly on the central issues in dispute.  On the other side, five United States-based

27   witnesses of uncertain materiality would face travel burdens in either forum.  Because the

28   concentration of material witnesses in Canada is both concrete and substantial, and because

no material witness resides in Arizona aside from Defendants themselves, litigating in this Court would impose a significant and unnecessary burden on the witnesses whose testimony matters most.  This portion of the first factor weighs in favor of dismissal, as does overall consideration of the first factor.

### 2.  Forum's Convenience to the Litigants

Regarding the second private interest factor—convenience to the litigants—Mayfair Gold argues that Arizona is a convenient forum because potential witnesses are dispersed across jurisdictions and because Mr. Evans resides in Arizona.  Neither contention is sufficient.  Mayfair Gold is a Canadian company, with its registered office in British Columbia and its principal place of business in Ontario.  (*See* Doc. 12 at 3.)  Thus, litigating in Canada is convenient for Mayfair Gold, and Defendants have consented to the jurisdiction of the Canadian courts.

While Mr. Evans resides in Arizona, his residence alone does not render Arizona the most convenient forum, particularly where the dispute concerns a Canadian corporation, events centered in Canada, and agreements governed by Canadian law.  *See e.g.*, *Gemini Cap. Grp.*, 150 F.3d at 1091 (holding that a foreign plaintiff's choice of forum receives reduced deference even when the defendant is at home in the chosen forum).  Considered as a whole, Canada presents a more convenient forum for the parties.  Accordingly, this factor weighs in favor of dismissal.

### 3.  Access to Physical Evidence and Other Sources of Proof

Third, the Court considers accessibility of the evidence.  Courts have recognized that "[t]he location of evidence may be an important factor[,] . . . [but] is neutral or carries only minimal weight when the evidence is in electronic form."  *Brown v. Abercrombie & Fitch Co.*, 2014 WL 715082, at *5 (N.D. Cal. 2014) (citations omitted).  Technological developments have reduced the burden of retrieving and transporting documents, and this factor's importance has diminished in modern forum non conveniens analysis.  *See, e.g.*, *Friends of Scot., Inc. v. Carroll*, 2013 WL 1192956, at *3 (N.D. Cal. 2013).  Even where the evidence is stored in hard copy form, courts may look to whether transporting or

1    producing the documents would impose "significant hardship." *See Wilson v. Walgreens*

2    *Co.*, 2011 WL 4345079, at *2 (N.D. Cal. 2011) (quoting *Van Slyke v. Capital One Bank*,

3    503 F. Supp. 2d 1353, 1362 (N.D. Cal. 2007)).

4         In their Motion, Defendants asserted that the bulk of the relevant evidence is located

5    in Ontario or British Columbia, including documents relating to Mr. Evans's employment,

6    the shareholder meeting and proxy contest administered in British Columbia, and the

7    investment fund in Ontario that holds the challenged termination payment. (Doc. 17 at 7.)

8    In response, Mayfair Gold argued that there is no meaningful physical evidence in this case

9    and that the relevant materials consist primarily of electronically stored information

10   accessible from anywhere, rendering this factor irrelevant. (Doc. 18 at 11–12.) Mayfair

11   Gold also contended that Defendants had not identified any material evidence that could

12   not be accessed electronically. (*Id.*)

13        At oral argument, Defendants conceded that there are no unique hard-copy

14   documents in Canada that could not be produced in the United States and represented that

15   copying, scanning, or remote access would mitigate any concerns. Mayfair Gold, however,

16   argued for the first time that certain devices located in Arizona, including phones and

17   computers allegedly used in the wrongful conduct, would require forensic examination.

18   This argument was not raised in Mayfair Gold's briefing, and, again, need not be

19   considered. *See Xpotential Fitness*, 2020 WL 3971908, at *5 n.4.

20        Regardless, Defendants confirmed in their supplemental brief that, if this case were

21   to proceed in Canada, they will consent to Mayfair Gold inspecting any relevant physical

22   property in Arizona—including laptops, phones, or other electronic devices within their

23   possession, custody, or control. (*See* Doc. 32 at 11–14.) Given this agreement and the

24   largely electronic nature of the other evidence, the Court finds that transporting or

25   producing materials would not impose significant hardship. Accordingly, the Court

26   concludes that the ease of access to evidence factor is neutral.

27        **4. Whether Unwilling Witnesses Can be Compelled to Testify**

28        Fourth, the Court considers the availability of compulsory process to secure

1  witnesses. "'[T]he relative ability of the forums to compel the attendance of significant

2  unwilling witnesses at trial' is an important . . . factor." *Ravelo Monegro v. Rosa*, 211 F.3d

3  509, 514 (9th Cir. 2000) (quotation marks omitted).  As with the residence inquiry, the

4  focus is on the materiality of anticipated testimony and the accessibility of those witnesses

5  to the forum—not on the sheer number of witnesses identified.  *Lueck*, 236 F.3d at 1146.

6      Defendants have identified five witnesses located in Canada whose testimony is

7  material to the core issues in dispute and who will not voluntarily participate in litigation

8  in the United States: Frank G., Roland H., Douglas C., Christopher R., and Harry P.  (Doc.

9  19-1 at 2–5.)  Four of them—Frank G., Douglas C., Christopher R., and Harry P.—

10 submitted declarations expressly stating: "I do not consent to appear voluntarily in this

11 proceeding and any request for testimony must comply with applicable Canadian legal

12 requirements."  (Doc. 32 at 3–10.)  Although no declaration was submitted from Roland

13 H., Mr. Evans's declaration represents that Roland H. is likewise unwilling to participate

14 voluntarily.  (Doc. 19-1 at 2.)  As discussed above, these witnesses are central to Mr.

15 Evans's defenses, and their testimony goes to the core issues in this case.

16     Mayfair Gold argues that, given the opportunity to review the declarations before

17 submitting supplemental briefing, it would challenge whether each declarant identifies a

18 genuine, good-faith basis for unwillingness to participate, rather than merely stating a

19 conclusion.  (Doc. 31 at 3.)  Mayfair Gold also points to an email discussed at oral argument

20 concerning Mr. Evans's communications with potential witness Kyle M., arguing it "casts

21 doubt on Defendants' representations."  (*Id.*)[2]  The Court addressed the tone of that

22 communication at oral argument and does not take the concern lightly.  However, on the

23 present record, there is no evidence of improper coercion or intimidation, nor is there

24 anything undermining the sworn declarations submitted in support of the Motion.  The

25 declarations establish that these witnesses do not consent to voluntary appearance in this

26 ───────────────
   [2]    Mayfair Gold also contends that some declarants may have participated in the
27 conduct alleged in the First Amended Complaint which could "potentially make them co-
   conspirators in Mr. Evans's alleged wrongful conduct and therefore possibly liable." (Doc.
28 31 at 3.)  These individuals are not named as defendants, and any potential co-conspirator
   liability is not at issue at this stage.  This does not affect the sufficiency of the declarations
   for purposes of the forum non conveniens analysis.

1    proceeding, (Doc. 32 at 3–10), which is all that is required at this stage.  To the extent

2    Mayfair Gold's supplemental briefing can be construed as a request to file a sur-reply, it is

3    denied.    The relevant question is whether the material witnesses are unwilling to

4    participate, not whether they provide detailed justifications for that unwillingness, and the

5    existing record is sufficient to resolve that question.

6         Defendants are not required to prove with certainty that each witness will refuse to

7    appear or to provide exhaustive evidentiary detail at this stage. *Piper Aircraft*, 454 U.S. at

8    258.  It is sufficient to demonstrate that key witnesses are located outside the forum and

9    beyond the court's compulsory process. *See id.*; *In re Air Crash Over Taiwan Straits on

10   May 25, 2002*, 331 F. Supp. 2d 1176, 1198 (C.D. Cal. 2004) (defendants need not "identify

11   each potentially critical witness, nor submit affidavits that provide significant evidentiary

12   detail").  Defendants have done more than enough: they identified specific Canadian non-

13   party witnesses material to Mr. Evans's defenses, produced declarations from four of them

14   expressly declining voluntary participation, and represented that a fifth is similarly

15   unwilling.  Because these individuals reside outside this Court's subpoena power, *see

16   Merino v. U.S. Marshal*, 326 F.2d 5, 13 (9th Cir. 1963), Defendants have made a sufficient

17   showing for purposes of the forum non conveniens analysis.

18        While some witnesses may ultimately choose to testify voluntarily, the inability to

19   *compel* their attendance at trial is what matters here.  This distinction also reframes the

20   burden comparison Mayfair Gold invites.   Mayfair Gold's five United States-based

21   witnesses—none of whom resides in Arizona—face comparable travel burdens regardless

22   of forum, and only one has indicated an unwillingness to testify in Canada.  By contrast,

23   five material Canadian witnesses have declined to appear in Arizona, and this Court lacks

24   any mechanism to compel them to come here.   The Canadian courts can enforce

25   compulsory process against these Canadian residents; this Court cannot.   This factor

26   weighs in favor of dismissal.

27        **5.  The Cost of Bringing Witnesses to Trial**

28        Fifth, the Court considers the cost of attendance of willing witnesses.  As discussed

- 12 -

above, *see supra* Section IVB(1), trying this case in Arizona would require significant travel costs for both parties to transport the six Canadian witnesses to the United States—assuming their appearance could be secured at all.  Further, the United States-based witnesses would also have to travel from Florida, Texas, and California, so an Arizona trial would be inconvenient and costly to them as well.  Given all witnesses—except for Defendants, who have consented to suit in Canada—would have to incur significant travel expense to attend an Arizona trial, this factor weighs in favor of dismissal.

### 6.  Enforceability of the Judgement

Sixth, the Court considers the enforceability of a judgment.  At oral argument, both parties conceded that an Arizona judgment could be enforced in Arizona or domesticated in Canada, and a British Columbia judgment could be enforced in Canada or domesticated in Arizona.  On this record, enforceability does not materially favor either forum.  Any potential uncertainty can be further mitigated by conditioning dismissal on Defendants' agreement to not challenge the enforcement in the United States of any final judgment issued by a Canadian court.  *See In re Herbert*, 2014 WL 1464837, at *11 (D. Haw. 2014), *aff'd sub nom. Herbert v. VWR Int'l, LLC*, 686 F. App'x 520 (9th Cir. 2017) (conditioning forum non conveniens dismissal on "Defendants' agreement to . . . allow for the enforcement of any Indonesian judgment in the United States").  Accordingly, this factor is neutral.

### 7.  All Other Practical Problems

The last factor—all other practical problems that make trial of a case easy, expeditious and inexpensive—is neutral, as neither party focused on this factor in briefing or argument.

The Court finds that the private interest factors weigh in favor of the alternative British Columbia forum and dismissal.

### C. Public Interest Factors

The public interest factors that courts must consider are "(1) local interest of [the] lawsuit; (2) the court's familiarity with governing law; (3) burden on local courts and

juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum." *Lueck*, 236 F.3d at 1147 (citing *Piper Aircraft*, 454 U.S. at 259–61).

### 1. Local Interest of the Lawsuit

First, although both Arizona and Canada have some interest in the litigation, Canada's interest is substantially stronger. The dispute involves Mayfair Gold, a corporation organized under the laws of British Columbia, Canada, with its principal place of business in Ontario, Canada, and operations located in Canada. (*See* Doc. 12 at 3.) The claims arise from alleged misconduct directed at the corporation and involve, among other things, the validity of amendments to employment agreements governed by British Columbia law and allegedly executed without proper board authorization. (*See id.* at 16–20.) The termination payment at issue was funded and administered in Canada, and disputes concerning those funds were previously litigated in a Canadian court. (*See id.* at 13–16.) Canada therefore has a strong interest in resolving disputes affecting the integrity of its corporations.

By contrast, Arizona's connection to the dispute is limited primarily to Defendants' residence. Although they reside in Arizona, that fact alone does not transform this case into a local Arizona controversy. Nor does the alleged involvement of an Arizona resident in communications or decision-making related to the disputed payment render the case meaningfully connected to the broader Arizona community. Courts have cautioned that accepting such an approach would risk converting any dispute involving a U.S. resident or communications from the United States into a "local" case, effectively "making the United States federal court system the surrogate court for the entire modern world global economy." *Windt v. Qwest Commc'ns Int'l, Inc.*, 544 F. Supp. 2d 409, 423 (D.N.J. 2008), *aff'd*, 529 F.3d 183 (3d Cir. 2008). Accordingly, this factor weighs in favor of dismissal, as Canada has the stronger interest in resolving this dispute.

### 2. Court's Familiarity with Governing Law

Second, because resolution of this dispute will require analysis of Canadian law, with which Canadian courts are more familiar, this factor weighs in favor of dismissal. The

parties dispute which issues will require application of foreign law, but they agree that at least some issues will involve British Columbia law.  (*See* Doc. 17 at 8; Doc. 18 at 15–16.)  Mayfair Gold argues that this factor should carry little weight because Canadian law derives from the common-law tradition and is similar to Arizona law.  While the Court does not doubt its ability to apply foreign law, the relevant inquiry is comparative: whether another forum is more familiar with the governing law.  *See Piper Aircraft*, 454 U.S. at 260 n.29.  The need to apply foreign law favors dismissal here.  *See Lueck*, 236 F.3d at 1148 n.6 (determining that likely application of foreign law weighed in favor of dismissal).

### 3.  Burden on Local Courts and Juries

Third, because resolution of this dispute would require an Arizona jury to become familiar with a Canadian company, its operations, and Canadian law, this factor weighs in favor of dismissal.  Although Mayfair Gold argues that an Arizona jury could handle these issues, the dispute centers on alleged misconduct in Canada, involving a Canadian corporation, and employment agreements governed by Canadian law.  It would be unreasonable to require local jurors to invest substantial time in a case with only a de minimis connection to the United States.  Accordingly, this factor favors dismissal.  *See Vivendi S.A. v. T-Mobile USA, Inc.*, 2008 WL 2345283, at *15 (W.D. Wash. 2008), *aff'd*, 586 F.3d 689 (9th Cir. 2009).

### 4.  Congestion in the Courts

Fourth, neither party argues that court congestion favors this Court or the proposed alternative forum.  The Court has received no information regarding the relative congestion of the foreign courts, and therefore finds this factor to be neutral.  *See id.*; *Carijano*, 643 F.3d at 1233 (noting that this factor is neutral where both the domestic and foreign court "have similarly crowded dockets").

### 5.  Costs of Resolving a Dispute Unrelated to this Forum

Finally, the fifth factor, the costs of resolving a dispute unrelated to this forum, also weighs in favor of dismissal.  The Court has already found that the connection of this case to Arizona is minimal and sees no reason to expend further resources adjudicating this

dispute when those resources could be more properly directed to cases with stronger ties to this District.

## V.    CONCLUSION

The court finds that there is an adequate alternative forum, and that the balance of private and public interest factors weighs in favor of dismissing this case.  The Court hereby conditions its forum non conveniens dismissal on Defendants' agreement to: (1) submit to service in British Columbia; (2) toll any statute of limitations that might apply to Mayfair Gold's re-filed claims for 120 days after dismissal by this Court; (3) consent to Mayfair Gold inspecting any relevant physical property in Arizona, including laptops, phones, or other electronic devices within their possession, custody, or control; and (4) allow for the enforcement of any Canadian judgment in the United States.  Moreover, although there is no evidence that Defendants have acted to the contrary, the Court directs them to cooperate in good faith in all pretrial and trial aspects of any British Columbia litigation.  *See Carijano*, 643 F.3d at 1234 ("District courts are not required to impose conditions on forum non conveniens dismissals, but it is an abuse of discretion to fail to do so when there is a justifiable reason to doubt that a party will cooperate with the foreign forum." (citation omitted)).

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss Plaintiff's First Amended Complaint Based on Forum Non Conveniens (Doc. 17) is **GRANTED**, subject to the conditions set forth in this order.

**IT IS FURTHER ORDERED** directing the Clerk of Court to enter judgment accordingly and close this case.

Dated this 6th day of March, 2026.

Honorable Sharad H. Desai
United States District Judge

- 16 -